**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 04-cv-0342-MJR** |
| | ) | |
| **CARL MILLER,** | ) | |
| **CHARLES HINSLEY,** | ) | |
| **SHELTON FREY,** | ) | |
| **ROGER WALKER, and** | ) | |
| **RABBI BINYOMIN SCHIEMAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

In May 2004, while confined at Tamms Correctional Center, Michael Williams filed

a complaint against Carl Miller, Charles Hinsley, Shelton Frey, Roger Walker, and Rabbi Schieman[1]

("Defendants") under 42 U.S.C. § 1983. Williams' amended complaint also includes claims under

the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq.,

and the Illinois Religious Freedom Restoration Act ("IRFRA"), 775 ILCS 35/1, et seq. More

specifically, Williams alleges that Defendants do not permit him to practice his religion – Judaism

– by (1) refusing to change his religion from Catholic to Jewish in the Offender Tracking System

("OTS"), (2) refusing to provide him a kosher diet, and (3) not allowing him to receive certain

religious items essential to the practice of his religion, all in violation of the First and Fourteenth

---

[1]     Although Rabbi Schieman's name is spelled "Scheiman" in the
caption of the amended complaint (Doc. 6) and throughout
Defendants' summary judgment motion (Doc. 44), presumably the
correct spelling is "Schieman" – as in his own affidavit (Doc. 44-4).

Amendments.

Now before the Court is Defendants' September 22, 2006 summary judgment motion (Doc. 44), which the Court grants in part and denies in part for the reasons that follow.

## I. SUMMARY OF KEY UNDISPUTED FACTS & ALLEGATIONS

Williams' amended complaint alleges that Defendants, who are all officials, employees, or agents of the Illinois Department of Corrections ("IDOC"), "refused to allow [him] to practice his religious beliefs" by denying his request to have his religious designation changed from Catholic to Jewish in the OTS.  Williams claims that in 2000 or 2001 he began to look into converting to Judaism, and he ultimately decided to convert in December 2003 (Doc. 44-2 at p. 13).  That same month, Williams submitted his first written request to Defendant Miller, a chaplain employed by the IDOC, asking that his listed religion be changed to Judaism and that he be provided a Torah, Talmud, and Mishnah (Doc. 46-3 at p. 13).  Later that month, Miller denied Williams' request to change his religion to Judaism, informing him: "On 1-23-03, Rabbi Schieman said 'no prison inmate conversion to Judaism is allowed.'  Only after being released from prison can conversion to Judaism be possible.  No Torah, Talmud or Mishnah is available" (Doc. 46-3 at p. 8).  Nothing in this response indicated that IDOC officials questioned Williams' sincerity as to his religion, faith, or beliefs.

On January 28, 2004, Williams sent another resident request advising Miller that Williams was sincerely practicing Judaism and required a kosher diet, yarmulke, tefillin, and tsitsith. The next day Miller denied Williams' request, explaining:  "According to your OTS, your religion is listed as 'Catholic' (you changed it to Catholic from Muslim in (*sic*) 4-6-02). Therefore, since your requests do not apply to Catholics, I cannot honor your requests" (Doc. 46-3 at p. 14).  All of the Defendants, save Hinsley and Schieman, admit that Williams is not allowed a kosher diet, a yarmulka,

2

a prayer shawl, or tefillin unless his religion is changed in the OTS (Doc. 46-3 at p. 17; Doc. 21 at p. 5; Doc. 22 at p. 6; Doc. 24 at p. 6).  Williams made other requests and filed grievances regarding his inability to get his religious status changed in the OTS, but all were denied (Doc. 44-5 at ¶ 31).

Prior to being named as a Defendant in this § 1983 action, Schieman never met, corresponded with, or spoke to Williams (Doc. 44-4 at ¶ 3; Doc. 44 at ¶¶ 33-36).  Schieman's only involvement in this matter was a telephone conversation he had with Chaplain Miller, wherein Miller asked Schieman about the procedure for converting to the Jewish religion (Doc. 44-4 at ¶ 6; Doc. 44 at ¶ 38).  Schieman maintains that he informed Miller that a person who is not Jewish at the time he is incarcerated may begin the process of converting while in prison, but the conversion cannot be *completed* until after release (Doc. 44-4 at ¶ 7; Doc. 44 at ¶ 39).

Williams claims that Schieman told him that "he could not convert or change his religion to Judaism while he was in prison" (Doc. 46-3 at ¶ 3).   Schieman asserts that he does not make policy for the IDOC, and he has no role in deciding whether a particular inmate can change his listed religion or diet (Doc. 44-4 at ¶¶ 9-10).  Further, Schieman states that he did not object to or know of Williams' request to change his listed religion at any time before Williams' complaint was filed; nor does Schieman personally object to such a change even though (in Schieman's mind) Williams has not yet completed the conversion process (Doc. 44-4 at ¶¶ 11-12).

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Mote v. Aetna Life Ins. Co.*, – F.3d –, 2007 WL 2609431, *3 (7th Cir. September 12, 2007),

*citing Tegtmeier v. Midwest Operating Engineers Pension Trust Fund,* **390 F.3d 1040, 1045 (7th Cir. 2004), and FED. R. CIV. P. 56(c).**  In making this determination, the Court must view the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party.  ***See, e.g., Hicks v. Midwest Transit, Inc.,* – F.3d –, 2007 WL 2580430, \*3 (7th Cir. Sept. 10, 2007)**; *Healy v. City of Chicago,* **450 F.3d 732, 738 (7th Cir. 2006).**

On a motion for summary judgment, the trial court must decide whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. ***See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). *Accord Ruffin Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005)(the movant bears the burden of proving that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, but the nonmovant "retains the burden of producing enough evidence to support a reasonable jury verdict in his favor.").**

Stated another way, the nonmovant must present "specific facts showing that there is a genuine issue for trial," and "only if a reasonable jury could render a verdict" for the nonmovant, does he defeat summary judgment. ***Jordan v. Summers*, 205 F. 3d 337, 247 (7th Cir. 2000), *citing* Fed. R. Civ. P. 56(e) and *Vanasco v. National-Louis University*, 137 F.3d 962, 965 (7th Cir. 1998).** Additionally, summary judgment will not be defeated simply because motive or intent is involved. ***Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *Accord Jordan*, 205 F.3d at 344.**

### III. ANALYSIS

Defendants argue that they are entitled to summary judgment because: (1) the Free

4

Exercise Clause of the First Amendment does not protect offender requests that are not sincerely held, (2) RLUIPA does not protect insincerity, (3) there was no intentional and arbitrary discrimination against Williams based on his religion, (4) qualified immunity bars Williams from receiving damages, (5) sovereign immunity applies to all claims against Defendants in their official capacities, and (6) Schieman lacked the requisite personal involvement for liability under § 1983.  Williams responded to Defendants' summary judgment motion on October 11, 2006.

### A.      Free Exercise of Religion

The Free Exercise Clause of the First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." **U.S. CONST. , AMDT. 1;** *Cantwell v. State of Connecticut***, 310 U.S. 296, 303 (1940)**.  Free exercise of religion includes "the right to believe and profess whatever religious doctrine one desires." *Employment Division, Dept. Of Human Resources of Oregon v. Smith***, 494 U.S. 872, 877 (1990)**.  And an inmate's right to exercise his religion "does not evaporate entirely when he enters a [prison]."  *See Tarpley v. Allen County, Indiana***, 312 F.3d 895, 898 (7th Cir. 2002),** *citing Cruz v. Beto***, 405 U.S. 319, 322 n. 2 (1972)**.

While the prisoner's right "is not unfettered," *Tarpley***, 312 F.3d at 898**, the Free Exercise Clause protects the religious practices of inmates where their religious beliefs are sincerely held.  *See Kaufman v. McCaughtry***, 419 F.3d 678, 681 (7th Cir. 2005)**.  A prison regulation that infringes upon an inmate's First Amendment rights is valid only "if it is reasonably related to legitimate penological interests." *Alston v. DeBruyn***, 13 F.3d 1036, 1039 (7th Cir. 1994),** *quoting Turner v. Safley***, 482 U.S. 78, 89 (1987)**.

In the action *sub judice*, Williams argues that his beliefs are sincerely held and that his

exercise of religion is burdened by Defendants' refusal to change his OTS religious classification to Jewish, because this is used as a basis to deny him kosher meals, religious texts, and religious accessories.  He argues that Defendants did not base their refusals upon a determination that his beliefs were not sincerely held.  Rather, Williams maintains, Defendants' denial was based upon Schieman's recommendation that no prisoner can completely convert to Judaism while incarcerated.

Defendants contend that Williams' religious beliefs were not sincerely held and, therefore, any denial of his religious exercise did not violate the First Amendment.  Defendants do not address whether their denial of Williams' classification as Jewish and corresponding denial of his requests for a kosher diet, religious texts, and religious accessories burdened his right to practice his religion, or whether the restriction was reasonably related to legitimate penological interests.  They simply argue that they are entitled to summary judgment because "the free exercise clause of the First Amendment does not protect offender requests which, though framed in terms of religious belief, are not sincerely held" (Doc. 44 at 13).

It is true that the Free Exercise Clause does not protect requests which are not sincerely held.  But this determination turns on the *factual* question of whether the belief is sincere. Williams insists that his belief *is* sincere, and Defendants assert that it is *not*.  Whether a religious belief is sincerely held is a question of fact best left to a jury to resolve.  It is not a question suited to resolution by the Court at the summary judgment stage.  ***See Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004)(holding that "a sincerely held religious belief is a factual determination, so we must not quickly dismiss such claims on summary judgment by concluding that those beliefs are not genuine.")**.  A jury will have to make what amounts to a credibility determination and decide whether Williams' claimed religious beliefs are in fact sincere.

6

This is not a question of law for the Court, and a reasonable jury could decide the issue either way.

      **B.**    **<u>RLUIPA</u>**

      RLUIPA provides that prison officials may not burden an inmate's exercise of his religion, unless they have a compelling interest to do so and use the least restrictive means possible to further that interest. ***Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003)**. Prison officials, however, may question the authenticity of a prisoner's religious belief, when that belief is "asserted as the basis for a requested accommodation." The officials, therefore, may inquire into the "sincerity of a prisoner's professed religiosity." ***Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)**.

      Defendants argue that Williams' RLUIPA claim merits summary judgment, because "a reasonable prison official could believe that the Plaintiff's requests were *not* motivated by a sincerely held religious belief," and  RLUIPA does not contain a strict liability standard, so even if Defendants "erred in their conclusion about the Plaintiff's sincerity, there appears to have been no compensable injury to Plaintiff" (Doc. 44 at pp. 16-17).

      The Court rejects Defendants' first argument for summary judgment on this claim, because to grant summary judgment, the Court would have to decide genuine issues of material fact – *i.e.*, whether Williams' religious beliefs were sincerely held and whether this was the basis for Defendants' denial of Williams' request to change religious status. Since a reasonable jury could find that Williams' beliefs were sincerely held and that a perceived lack of sincerity was not the basis for the denial of Williams' requests, summary judgment cannot be granted on this ground.

      The Court finds puzzling Defendants' second argument for summary judgment on Williams' RLUIPA claim. Defendants cite ***Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F.Supp.2d 961, 992 (N.D. Ill. 2003)**, for the proposition that "RLUIPA does not

contain a strict liability standard."

> But only one sentence in that case even *mentions* strict liability:
>
> Section(a), in contrast, mandates application of the compelling interest standard.   If Section (b) were interpreted as a "strict liability" provision, then the section would potentially pose constitutional problems.

***Id.***   Plus, ***Vineyard*** dealt only with the religious *land use* section of RLUIPA – not the section applicable to institutionalized persons.  Summary judgment is not jutified on this basis.

## C.   <u>Discrimination and Equal Protection</u>

The  equal protection clause of the Fourteenth Amendment protects persons from disparate treatment based on membership in a protected class, such as religion.  ***Greer v. Amesqua***, **212 F.3d 358, 370 (7th Cir. 2000)**.

Here, Defendants argue that the undisputed facts in the record demonstrate the following:  (1) Williams was not treated less favorably than members of other religions because he was Jewish, (2) Williams' requests were denied because they did not appear to be based on sincerely held religious beliefs, and (3) even if the requests *were* based on sincerely held religious beliefs, there was no equal protection violation because "the requisite mental state is lacking" (Doc. 44 at p. 18).

First, the record *fails* to establish that Williams was not treated less favorably than members of other religions because he was Jewish.  Williams asserts Defendants allow inmates to switch to Catholicism, Islam, or Protestantism, but not Judaism. He further claims that Defendants make available Catholic Bibles, Protestant Bibles, and Qu'rans in the visiting room, while refusing to provide Jewish Bibles (Doc. 6 at ¶ 29).  He also alleges that Defendants refuse to allow him to possess a yarmulka, a prayer shawl, or tefillin, but Catholics are provided a Catholic Bible, Catholic correspondence courses, and rosaries, and Muslims are provided a choice of a "'Nobal Qu'ran',

'Glorious Qu'ran', 'Illustrious Qu'ran', or a 'Yusuf Ali Qu'ran'" (Doc. 6 at ¶ 26).   A material disputed fact issue remains on this point.

Defendants' second argument – that Williams' requests were denied because they did not appear to be based on sincerely held religious beliefs – fails for the same reason stated previously. It is a disputed issue of material fact, not suited for resolution via summary judgment.

Defendants' third argument, that even if Williams' requests were based on sincerely held religious beliefs, there was no equal protection violation because "the requisite mental state is lacking," likewise fails.  Not only do Defendants rely on a case dealing with the *due process clause* rather than the equal protection clause, but also they provide no factual basis as to why such a standard, *if* applicable, would support summary judgment in the case at bar.  Accordingly, the Court rejects this basis for summary judgment on Williams equal protection claim.

### D.    Qualified Immunity

Defendants also contend that they are entitled to qualified immunity, because their "denial of the Plaintiff's requests was objectively reasonable in light of clearly established federal law and the undisputed facts" (Doc. 44 at pp. 23-24).  The problem is that this argument assumes that the undisputed facts demonstrate that Williams' requests were denied because Defendants found his religious beliefs insincere.  As discussed above, this is not the case.

Williams has set forth enough evidence such that a reasonable jury could conclude that Williams' sincerity was not a factor in Defendants' denial of his requests – that, instead, it was the institution's *policy* that no inmates could convert to Judaism during their period of incarceration.  As the summary judgment movants, Defendants bear the burden of showing why they are entitled to qualified immunity.  This burden has not been satisfied, so the Court denies summary judgment as

to qualified immunity.

### E.      Sovereign Immunity

Defendants urge the Court to dismiss Williams' state law claims because (1) "none of these regulations or statutory provisions prohibit the Defendants from questioning the sincerity of offenders (*sic*) requests which have been framed in terms of religious belief," and (2)  the Eleventh Amendment bars maintenance of Williams's state law claims against Defendants in their official capacities.

The Court has already found the sincerity of Williams' religious belief to constitute a fact question which must be left for jury determination.  Defendants' second argument on this issue requires closer scrutiny.  Defendants are sued both in their individual and in their official capacities.  Williams seeks monetary damages on all claims, in addition to declaratory and injunctive relief.  However, official capacity suits are actually suits against the state, and the Eleventh Amendment generally bars such damage actions. ***Kentucky v. Graham***, **473 U.S. 159, 166-167, 169 (1985)**.  Clearly, Williams cannot recover damages against Defendants in their *official* capacities for violations of the First and Fourteenth Amendments.  But whether he may maintain such a claim for damages on his RLUIPA and IRFRA claims presents a closer question.

To date, there is no controlling decision regarding damages under RLUIPA.  The statute provides for "appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  "Government" includes a state, a department or agency of the state, and any person acting under color of state law. 42 U.S.C. § 2000cc-5(4)(A).   Based on the plain language of the statute, both official capacity actions and individual capacity actions are available.   Accordingly, "appropriate relief" would mean the remedies available based on the capacity of the defendant. Thus, unless there is a

waiver or abrogation of Eleventh Amendment sovereign immunity from suit for monetary damages in an official capacity suit, only declaratory and injunctive relief is available.  This Court finds no such waiver or abrogation.

RLUIPA does not, on its face, abrogate sovereign immunity.  Moreover, "Congress cannot override the State's immunity using an Article I power such as the Spending Clause legislation." ***Cherry v. Univ. of Wisconsin Sys. Board of Regents***, **265 F.3d 541, 554 (7th Cir. 2001)**.  RLUIPA was enacted pursuant to the Spending and Commerce Clauses – both Article I powers.  ***Cutter*, 544 U.S. at 715.  *See also* 42 U.S.C. § 2000cc1(b).**

Without question, RLUIPA applies to Illinois and the IDOC, based on the receipt of federal funds. ***See* 42 U.S.C. § 2000cc-1(b)(1); *Cutter*, 544 U.S. at 716 n.4 (observing that every state accepts federal funding for its prisons)**.  However, RLUIPA does not specify that receipt of federal funds constitutes a waiver of sovereign immunity.  Stated another way, mere receipt of federal funds does not effect a waiver of sovereign immunity, and Congress must unambiguously express its intent for such a quid pro quo waiver. ***Cherry*, 265 F.3d at 554**.

For the above-stated reasons, the Eleventh Amendment bars monetary damages against Defendants insofar as they are sued in their official capacities.  Declaratory relief remains available, as does injunctive relief.

The same conclusion is justified with regard to the Illinois Religious Freedom Restoration Act (IRFRA), which provides:

> Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest.

**775 ILCS 35/15**.

A person may obtain "appropriate relief against a government." **775 ILCS 35/20**. "Government" is defined to include "a branch, department, agency, instrumentality and official (or other person acting under color of law) of the State of Illinois or a political subdivision of the State, including a home rule unit." **775 ILCS 35/5**.

Thus, by its plain terms, IRFRA leaves open the possibility of monetary damages. Had the Illinois legislature wanted to limit the available remedies, it certainly could have used more specific language. Thus, the Court concludes that monetary damages are available under IRFRA. *See generally Oak Grove Jubilee Center, Inc. v. City of Genoa*, **808 N.E.2d 576, 615 (Ill.App. 2nd Dist. 2004) (monetary relief from defendant city for loss of property due to violation of IRFRA deemed possible)**.

### F.   Personal Involvement of Defendant Schieman

To be held liable under § 1983, a plaintiff must demonstrate that a defendant was personally responsible for the denial of a constitutional right.  *See Johnson v. Snyder*, **444 F.3d 579, 583 (7th Cir. 2006)**, *citing Gentry v. Duckworth*, **65 F.3d 555, 561 (7th Cir. 1995)**.  Liability under § 1983 must be premised on a finding that a defendant "caused the deprivation at issue." *Palmer v. Marion County*, **327 F.3d 588, 594 (7th Cir. 2003)**, *quoting Kelly v. Mun. Courts of Marion County*, **97 F.3d 902, 909 (7th Cir. 1996)**.

Defendant Schieman argues he is entitled to summary judgment, because he was not personally involved in denying Williams' constitutional rights.  In an affidavit submitted in support of summary judgment, Schieman avers that he is an IDOC contractor who acts as chaplain for Jewish inmates and answers questions about Judaism (Doc. 44-4 at ¶ 2).  He attests that, prior to receiving

the complaint, he had not met or otherwise corresponded with Plaintiff Williams (Doc. 44-4 at ¶ 3). He admits that he responded to a question from Defendant Miller asking about inmate conversion to Judaism, but he says inmate Williams was not specifically mentioned (Doc. 44-4 at ¶¶ 5-6).

Schieman does not make policy for IDOC, does not have any involvement in deciding whether an inmate can change his listed religion, and does not have any role in setting or modifying an inmate's diet (Doc. 44-4 at ¶¶ 8-10).  He had no involvement in denying Williams' request to change his listed religion or in denying Williams kosher meals (Doc. 44-4 at ¶¶ 11-12).

Williams offered no any evidence (affidavits, exhibits, etc.) to counter this affidavit or otherwise demonstrate that Schieman was personally responsible for failing to change Williams' listed religion in the OTS, deny Williams books on Judaism, or to deny Williams kosher meals.

The record reveals no genuine issue of material fact as to Schieman's personal liability under § 1983.  And because Schieman cannot be held liable without a showing of personal involvement, he is entitled to judgment as a matter of law.  Accordingly, the Court **grants** summary judgment in favor of Defendant Schieman on the First and Fourteenth Amendment claims brought under § 1983.

## IV. CONCLUSION

For the above-described reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion for summary judgment (Doc. 44).

The motion is granted as to the § 1983 claims against Defendant Schieman.  (Other claims remain against Schieman, thus he is not dismissed from the case via this Order.)  At the close of the entire case, the Clerk of Court **SHALL ENTER JUDGMENT** in favor of Defendant Schieman and against Plaintiff Williams as to the § 1983 claims.

The motion also is <u>granted</u> as to the damages claims asserted against Defendants in their *official* capacities.   At the close of the entire case, the Clerk of Court **SHALL ENTER JUDGMENT** in favor of Defendants and against Plaintiff Williams on these claims.

As to all other Defendants and claims, genuine issues of material fact preclude the entry of summary judgment, so the motion is <u>denied</u>.  Dispositive motions having been resolved, the undersigned District Judge anticipates that this case now will be set for final pretrial conference before Magistrate Judge Wilkerson, after which the case can be certified "ready for trial."

The undersigned Judge currently is setting trials in the Spring of 2009.  However, the parties are reminded that they have the option to obtain an earlier trial setting by consenting to trial before Magistrate Judge Wilkerson.  Questions regarding this option may be addressed to Courtroom Deputy Annie McGraw (618-482-9298) or Robin Butler (618-482-9376).

IT IS SO ORDERED.

DATED this 28th day of September 2007.

s/ Michael J. Reagan
MICHAEL  J.  REAGAN
United States District Judge

14